Gary A. Gotto, Bar No. 007401
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

Attorneys for Plaintiff AMERICAN STEEL, INC.
*Additional Counsel Listed on Signature Block*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| American Steel, Inc., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Vensure Employer Services, Inc., d/b/a Vensure Employer Solutions, and VensureHR, Inc.,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff American Steel, Inc., individually and on behalf of all others similarly situated, brings this class action complaint against Defendants Vensure Employer Services, Inc. d/b/a Vensure Employer Solutions, and VensureHR, Inc. (collectively, "Vensure"). Plaintiff alleges the following on personal knowledge, investigation of counsel, and information and belief:

1

## I. PARTIES

1. Plaintiff American Steel, Inc. ("ASI") is a Montana corporation with its principal place of business in Billings, Montana. At all relevant times herein, ASI was a business that had Defendants perform payroll administration, payroll taxes, and other professional employer services on its behalf.

2. Defendant Vensure Employer Services, Inc. d/b/a Vensure Employer Solutions is an Arizona corporation with its principal place of business in Chandler, Arizona.

3. Defendant VensureHR, Inc. is an Arizona corporation with its principal place of business in Chandler, Arizona.

4. At all relevant times herein, Vensure provided professional employer services, including employment administration services and employee tax services, for businesses.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are least 100 class members, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants because they are Arizona corporations and their headquarters and principal places of business are in Arizona.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants transact substantial business in the state of Arizona, including in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III. COMMON FACTUAL ALLEGATIONS

**A.     Vensure's Provision of Payroll and Tax Services**

8. Vensure is a professional employer organization ("PEO") based in Arizona that provides business administration services, including payroll administration and payroll tax services, for businesses across the country.

9. Among other services, Vensure provides payroll and tax administration services, which include withholding, reporting, and remitting federal and state employment taxes on behalf of its clients. Upon information and belief, Vensure also undertakes responsibility for ensuring its clients, including Plaintiff and the other Class members, secure any employment tax benefits or deductions to which they are entitled.

10. When Vensure provides payroll and tax administration services, clients report to Vensure the wages owed to their employees. After that, Vensure determines the federal and state employment taxes believed to be owed for each client's employees and requests that the client remit the wages and tax funds to Vensure. Vensure then generates the paychecks for its clients' employees and is required to deposit the associated employment taxes with the Internal Revenue Service ("IRS"). Notably, while Vensure is listed on the Form W-2s for its clients' employees, Vensure is not these employees' employer. Instead, Vensure only performs administrative and support services for its clients.

11. In addition to handling regular payroll, Vensure—either directly or via accounting firms—also completes quarterly employment tax reports and submits them to the IRS via Form 941. Vensure completes a single, aggregate Form 941 encompassing reporting for all clients, which are identified on an attached Schedule R.

12. To the extent employment taxes were overpaid, Vensure, at its clients' direction and on its clients' behalf, elects whether to apply that overpayment as a credit to the next quarter or to request a refund of the overpaid employment taxes. At all relevant times, upon information and belief, most Vensure clients requested refunds of the employment tax overpayments instead of credits.

13. Overpaid employment taxes that are to be refunded accrue compounded interest at the federal short-term rate plus two percentage points for taxpayers that are corporations and plus three percentage points for other taxpayers. *See* 26 U.S.C. § 6621(a)(1); *see also* 26 U.S.C. § 6611. If a client requests a refund of overpaid employment taxes, upon receiving the refund, Vensure must remit that refund—including

3

the interest accrued thereon—to its client because the client paid the employment taxes and because the refund and interest are the client's property.

**B.     COVID-19 and the Employee Retention Credit**

14.     In 2020, in response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to help the economy, individuals, and employers. The CARES Act was then extended and modified by the Consolidated Appropriations Act of 2021.

15.     Among several other relief programs, the CARES Act initiated the Employee Retention Credit ("ERC") for qualifying employers. As amended, the ERC uses payroll tax credits or deferrals to provide benefits to small businesses impacted by the pandemic. It provides a refundable tax credit of 50% of qualified wages paid in a calendar quarter for businesses that continued to pay employees during shutdowns or during times when the employer had significant declines in gross receipts from March 13, 2020, to December 31, 2021.

16.     Notably, when clients and former clients of a PEO seek benefits under the ERC, their associated tax forms must be administratively filed through their PEO.

17.     Nevertheless, as the lawful employers of their employees that are otherwise eligible to receive the ERC, Plaintiff, the putative Class members, and other businesses using PEOs are the true owners of any ERC benefits paid out by the IRS, as well as any interest accruing on delays in refunding the ERC benefits (i.e., the overpaid employment taxes), regardless of whether the PEOs, such as Vensure, file for or receive the ERC benefits. *See* 26 U.S.C. § 6621(a)(1); *see also* 26 U.S.C. § 6611.

18.     At all relevant times, parties filing for ERC benefits did so through IRS Form 941. Therefore, Vensure was responsible for determining and/or verifying the amount of the ERC benefits for its clients, informing the IRS as to whether a credit or refund would be requested, and then remitting the benefit of the credit or refund—as well as any interest accrued thereon—to its clients. This is because Vensure's clients are the entities that continued to pay their employees during the pandemic.

4

19. At all relevant times, while the ERC was in effect, Vensure marked ERC proceeds to be refunded on behalf of its clients and refunded the ERC benefits to its clients. However, at all relevant times, Vensure failed to remit the interest paid out by the IRS that accrued on the ERC benefits to its clients, including Plaintiff. Instead, Vensure kept the interest the IRS paid out on the ERC refunds for its own use and benefit at its clients' expense.

20. As a direct and proximate result of Vensure's conduct, Plaintiff and the other members of the Class incurred actual damages in an amount to be established at trial.

### IV.   FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF

21. Plaintiff ASI is a steel fabrication business located in Montana.

22. In 2009, ASI hired Avitus, Inc. ("Avitus Group") to provide employee administration, payroll administration, and payroll tax services on its behalf. As part of the parties' relationship, Avitus Group would, among other things, withhold and collect all applicable employment taxes from ASI's employees' paychecks.

23. Upon information and belief, in or around 2020, Vensure gained control over Avitus Group. Upon information and belief, since then, Vensure has directed and controlled all aspects of Avitus Group's business and has made all substantive decisions regarding the ERC, ERC-related filings, and the payment(s) of any ERC-related funds. At all times relevant herein, Vensure has reported the taxes withheld on ASI's behalf on a quarterly basis using an aggregate IRS Form 941 submitted by Vensure.

24. Upon information and belief, after the CARES Act went in to effect, Vensure began sending out communications to its clients providing information about the ERC and soliciting the use of Vensure to file for ERC benefits. At all relevant times, these communications from Vensure regarding ERC benefits all failed to inform the client that the client may be entitled to interest paid out by the IRS on any ERC benefits or that Vensure would retain any interest the IRS paid out. For instance, in April 2021, Vensure

sent its clients, including Plaintiff, a communication advertising the submission of ERC claims through Vensure that failed to discuss interest paid out by the IRS on ERC claims: *See* Ex. A (4.15.21 email to Plaintiff). Similarly, in February 2021, Vensure sent a

> **COVID-19 Relief Bills**
>
> Dear Valued Client,
>
> In response to the financial needs of our economy, Congress has passed numerous relief bills designed to support the needs of business owners. The most recent bill known as the American Rescue Plan Act (ARPA) extended the Employee Retention Tax Credit (ERTC/ERC), the Families First Coronavirus Response Act (FFCRA), and added a new tax credit to pay COBRA premiums for Assistance Eligible Individuals (AEI). Vensure is poised and ready to help with respect to these tax credits (processing fees may apply).
>
> **Process**
> 1. Partner with your respective tax professional to determine eligibility/applicability and to establish a tax plan.
> 2. Once you have confirmed eligibility/applicability partner with your respective Client Relations team member to obtain, complete, and submit an updated COVID-19 Addendum.
> 3. Partner with your tax professional to calculate your ERTC and/or COBRA premiums paid then submit those calculations to your Client Relations team member. For FFCRA tax credits, pay employees utilizing the appropriate pay type designated for COVID Emergency Paid Sick Leave and/or COVID Emergency Family Medical Leave Act.
> 4. Once ERTC and/or COBRA premium calculations are received, your respective Client Relations team member will submit them to Vensure's Tax Department to file amended 941 returns.

communication to its clients that included information about filing ERC claims but failed to discuss Vensure's retention of interest paid out by the IRS on ERC claims:

6

> **COVID-19 Employee Retention Tax Credit**
>
> Dear Valued Client,
>
> The Consolidated Appropriations Act, 2021 was signed into law on December 27, 2020. Among the numerous COVID-19 relief provisions were modifications to the Employee Retention Tax Credit (ERTC). Specifically, the ERTC may now be claimed by employers even if they previously received a Paycheck Protection Program loan (PPP), or plan to obtain one, they just cannot count the earnings paid with PPP funds as qualifying wages for the ERTC if they have been or are expected to be forgiven.
>
> Additionally, employers may request the credit retroactively to March 12, 2020. The credit goes against the employer's portion of Social Security; however, the employer can retain the employee's federal withholdings and both the employee and employer portions of Social Security and Medicare in order to cover the credit, as the liabilities for Social Security alone will fall short of the ERTC. Additionally, employers are advised to consult with a tax professional regarding the impact as credits obtained will reduce the tax deductibility of wages paid as a business expense.
>
> We have attached a document that outlines the ERTC guidelines and processes to claim credits in more detail.
>
> **View ERTC Guidelines**

*See* Ex. B (2.4.21 email to Plaintiff). Upon information and belief, from at least early 2021 to present, Vensure has sent numerous standardized communications that similarly provided information regarding the ERC and solicited the filing of ERC claims through Vensure to clients, including Plaintiff, but failed to discuss Vensure's retention of any interest paid out by the IRS on ERC benefits.

25. After continuing to pay employees and keep its business alive during the pandemic, ASI made a claim under the ERC for the second and third quarters of 2021 for the payments made to its employees during that time. Vensure submitted this ERC claim to the IRS on ASI's behalf. ASI requested that any ERC payments be transmitted to it in the form of a refund.

26. Under the ERC, for the third quarter of 2021, ASI was entitled to a refund in the amount of $297,076.16, plus the interest accruing on the refund amount. Upon information and belief, the IRS paid Vensure both the amount of this refund and the interest accrued on it.

27. However, on April 4, 2025, Vensure remitted ASI a refund amount of only $297,076.16. Vensure did not include any interest payment or remit any interest to ASI. Upon information and belief, Vensure also received and should have remitted to Plaintiff

7

compound interest from the IRS on the refunded amount at the federal short-term rate plus two percentage points. *See* 26 U.S.C. § 6621(a)(1).

28. At all relevant times, Vensure withheld information regarding Plaintiff's entitlement to interest and the interest payment from the IRS that had accrued on Plaintiff's ERC refund, including in Vensure's communications and advertising materials regarding ERC refund claims. At no point when ASI was communicating with Vensure regarding filing for ERC benefits, did Vensure inform Plaintiff that it would retain any interest the IRS paid out on Plaintiff's ERC claims. Indeed, Vensure did not inform Plaintiff that it had received any interest payment from the IRS until Plaintiff inquired about it. And when Plaintiff asked in April 2025 about the withheld interest payment, Vensure confirmed that it had kept and was keeping the interest that is Plaintiff's property.

29. Plaintiff has still not received its refund from Vensure for the ERC filing for the second quarter of 2021. Plaintiff has not received an explanation from Vensure about whether Vensure has received the ERC refund amount for this filing or the interest for this refund amount from the IRS.

30. As a direct and proximate result of Vensure's actions, ASI has suffered injury and economic damages.

31. Upon information and belief, Vensure's conduct regarding ASI and the interest paid by the IRS on ASI's ERC refunds is part of Vensure's business practices and policies that are common to all Class members.

## V.   ESTOPPEL/TOLLING

32. Because of its fiduciary relationship of special trust and confidence with Plaintiff and the members of the Class, including with respect to the manner in which Vensure handled the property of Plaintiff and members of the Class, Vensure is and at all relevant times was under a continuous duty to disclose to Plaintiff and other Class members the nature and intent of its transactions and to provide its services in good faith.

33. Vensure misled Plaintiff and Class members, withheld material information, actively concealed and/or failed to disclose material facts, and/or actively concealed its

8

conduct, which deprived Plaintiff and the other Class members of substantial interest on tax refunds, as explained herein.

34. At all relevant times herein, Vensure knew its clients, such as Plaintiff and the other Class members, were entitled to the interest paid out by the IRS on their ERC refunds. But Vensure nonetheless kept this interest for itself and withheld the existence of the interest payment and Vensure's retention of it from Plaintiff and the putative Class members.

35. Based on the foregoing, Vensure is estopped from relying on any statutes of limitation, and any applicable statutes of limitation have been tolled.

## VI. CLASS ALLEGATIONS

36. Plaintiff brings this action both individually and as a class action, under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of themselves and the following Class:

> For the period of January 1, 2020, to present, all current and former individuals and entities that have used Defendants to file for and/or claim ERC benefits and received at least one ERC benefit refund check but were not remitted the interest paid by the IRS thereon.

37. The proposed Class is readily ascertainable because it is defined using objective criteria, allowing Class members to determine if they are part of the Class. Further, Class members can be readily identified through Defendants' records and information in Defendants' possession, custody, or control. For example, upon information and belief, Vensure maintains records for each of its clients, including records of ERC filings and payments.

38. Plaintiff's claims are typical of those of the Class. Plaintiff and Class members were damaged in the same way by the same conduct of the same Defendants.

39. Plaintiff will adequately protect and represent the interests of the proposed Class members. Plaintiff's interests are aligned with, and not antagonistic to, those of Class members.

9

40. Plaintiff is represented by attorneys who are experienced and competent in the prosecution of complex class action litigation.

41. Questions of law and fact common to the Class include, but are not limited to, the following:

    a. Whether Defendants processed ERC claims for Class members via Form 941 submissions;

    b. Whether Defendants received Class members' ERC funds from the IRS in the form of refunds pursuant to Form 941 submissions;

    c. Whether Defendants received any interest from the IRS on refunds pursuant to Form 941 submissions;

    d. Whether Defendants had a policy or practice to withhold information regarding interest payments received from the IRS;

    e. Whether Defendants had a policy or practice of withholding information regarding its retention of interest payments when advertising or selling its services;

    f. Whether such withholding constituted providing false or misleading information concerning the existence of interest payments under the Arizona Consumer Fraud Act;

    g. Whether Defendants remitted refunds and/or interest obtained from the IRS to Class members on receipt;

    h. Whether Defendants intentionally, knowingly, recklessly, or negligently failed to remit interest payments to Class members;

    i. Whether Defendants wrongfully exerted control or dominion, to the exclusion of Class members, over interest paid on their ERC refunds;

    j. Whether Defendants' conduct, policies, and business practices relating to interest obtained from the IRS had a tendency to deceive the public;

    k. Whether Defendants' conduct alleged herein violated the Arizona Consumer Fraud Act; and,

    l. Whether Class members are entitled to damages, restitution, a constructive trust, equitable relief, and/or other relief.

42. The above-identified common questions predominate over questions, if any, that may affect only individual Class members.

43. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

44. Although the exact number of Class members is uncertain, the number of putative Class members is greater than 100 such that joinder is impracticable. Upon information and belief, Defendants have filed ERC claims on behalf of hundreds of clients or more during the relevant period.

45. Class action treatment is a superior method for the fair and efficient adjudication of this controversy because class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of evidence, effort, and expense that numerous individual actions would require.

46. A class action is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. Trying this case on a class basis will be manageable. Plaintiff knows of no special difficulty that will be encountered in maintaining the action that would preclude maintaining it as a class action.

47. Rule 23(b)(2)'s elements are also met. Absent injunctive relief, Defendants will continue to commit the violations and engage in the conduct alleged herein. Defendants have acted on grounds that apply generally to members of the Class so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

**COUNT ONE — UNJUST ENRICHMENT**

48. Plaintiff and the putative Class members re-allege and incorporate by reference paragraphs 1 to 47 as if fully set forth herein.

49. Plaintiff and Class members lack an adequate remedy at law.

50. As alleged herein, Defendants received an economic benefit from Plaintiff and Class members in the form of the amount of interest the IRS paid on Plaintiff's and Class members' ERC claims, which was, at all relevant times herein, Plaintiff's and Class members' lawful property.

51. The benefit Defendants received came at Plaintiff's and Class members' expense because Plaintiff and Class members did not receive the interest payment from the IRS that they were lawfully entitled to.

52. Defendants accepted, appreciated, and retained the interest the IRS paid on Plaintiff's and Class members' ERC claims under circumstances that make it inequitable and unjust for Defendants to do so without compensating Plaintiff and Class members.

53. There is no reasonable justification for Defendants' retention of the interest the IRS paid on Plaintiff's and Class members' ERC claims.

54. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and Class members have suffered an impoverishment, in the form of economic damages, in an amount to be determined at trial.

55. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiff and Class members assert their claim for disgorgement as an alternative remedy.

56. Plaintiff and Class members are entitled to disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

**COUNT TWO — CONVERSION**

57. Plaintiff and the putative Class members re-allege and incorporate by reference paragraphs 1 to 56 as if fully set forth herein.

58. At all relevant times, the interest the IRS paid on Plaintiff's and Class members' ERC claims was Plaintiff's and Class members' lawful property to which Plaintiff and Class members were fully entitled. Plaintiff and Class members had an immediate possessory interest in the accrued interest on their ERC claims.

59. As alleged herein, instead of remitting the interest the IRS paid out on Plaintiff's and Class members' ERC claims, Defendants knowingly and intentionally retained the interest the IRS paid out on Plaintiff's and Class members' ERC claims for Defendants' own benefit, without legal justification or consent.

60. Defendants exercised dominion and control over the interest in a manner inconsistent with Plaintiff's and Class members' rights by withholding and converting it for Defendants' own use and/or failing to remit it to Plaintiff and Class members.

61. Defendants can, on information and belief, readily identify or segregate the interest the IRS paid on Plaintiff's and Class members' ERC claims upon review of their own business records, including records of their clients' ERC filings and payments.

62. Defendants had no legal right or authority to retain the interest the IRS paid on Plaintiff's and Class members' ERC claims. Instead, Defendants had an obligation to remit this interest to Plaintiff and Class members under 26 U.S.C. §§ 6611, 6621.

63. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been deprived of the economic benefits to which they were entitled and have suffered economic harm in an amount to be determined at trial.

64. Defendants intended to injure Plaintiff and Class members, and Defendants' actions consciously disregarded the risk of significant harm to Plaintiff's and Class members' rights, justifying the imposition of punitive damages under Arizona law.

## COUNT THREE — VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT, ARIZ. REV. STAT. ANN. § 44-1521 ET SEQ.

65. Plaintiff and the putative Class members re-allege and incorporate by reference paragraphs 1 to 64 as if fully set forth herein.

66. Plaintiff and Class members are "persons" under the Arizona Consumer Fraud Act ("ACFA"). *See* Ariz. Rev. Stat. Ann. § 44-1521(6) (defining "person" to include any corporation, company, or business entity).

67. The ACFA prohibits the use of "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact … in connection with the sale or advertisement of any merchandise." *See* Ariz. Rev. Stat. Ann. § 44-1522(A); *id.* § 44-1521(5) (defining "merchandise" to include any services).

68. As set forth herein, Defendants have engaged in unfair and/or deceptive trade practices by:

   A. Withholding, omitting, concealing, and/or failing to disclose material information in communications with Plaintiff and Class members in connection with advertisement and sales of their services, including their entitlement to interest paid out by the IRS on their ERC refunds and that Defendants would be retaining the amount of interest paid out by the IRS; and

   B. Failing to remit and keeping for their own benefit the interest payments the IRS paid out on Plaintiff's and Class members' ERC refunds when they knew the interest payments were Plaintiff's and Class members' rightful property.

69. By engaging in the above unfair and/or deceptive trade practices, Defendants have made material misrepresentations and engaged in deceptive trade practices in violation of the ACFA.

70. At all relevant times, Defendants knew the value of the ERC-related payments that their clients received from the IRS. Defendants' failure to communicate to

their clients their intention to keep the interest was false, misleading, and/or deceptive. Defendants' retention of interest that the IRS paid on Plaintiff's and Class members' ERC claims was neither disclosed nor authorized by Plaintiff or Class members.

71. Defendants' business practices and general course of conduct as alleged herein are unfair and injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated. Defendants' conduct, policies, and business practices alleged herein had and/or have the tendency to deceive the public.

72. By engaging in the wrongful conduct set forth herein, which has occurred in connection with the advertisement and sale of its services, Defendants have violated and continue to violate section 44-1522(A) of the ACFA. Specifically, as alleged in this Complaint, Defendants have committed and continue to commit deceptive and unfair acts or practices by concealing, suppressing, and omitting material facts, including the fact that Plaintiff and Class members were entitled to receive interest on ERC benefits from the IRS and that Vensure was retaining the interest the IRS paid on Plaintiff's and Class members' ERC benefits for Vensure's own benefit.

73. As set forth herein, Plaintiff and Class members were all exposed to the same, uniform omissions of material information relating to Vensure's retention of the interest the IRS paid on Plaintiff's and Class members' ERC claims.

74. Defendants' omissions relating to their withholding of interest paid by the IRS on their clients' ERC claims were material because the amount of interest was significant and valuable to Plaintiff's and Class members' businesses.

75. At all relevant times, Defendants intended for Plaintiff and Class members to rely on their unfair and deceptive acts and omissions. Plaintiff and Class members detrimentally relied on Defendants' failure to disclose Defendants' retention of interest owed to Plaintiff and Class members.

76. As a proximate result of Defendants' unfair and deceptive conduct, Plaintiff and Class members suffered actual damages as set forth herein, including by failing to receive the economic benefits of the interest the IRS paid out on Plaintiff's and Class members' ERC claims.

77. Plaintiff, on behalf of itself and the Class, seeks an order awarding them actual damages in an amount to be proven at trial and such other relief to which they may be entitled.

78. Defendants intended to injure Plaintiff and Class members, and Defendants' actions consciously disregarded the risk of significant harm to Plaintiff's and Class members' rights, justifying the imposition of punitive damages under Arizona law. Therefore, Plaintiff also seeks an award of punitive damages.

**WHEREFORE**, Plaintiff, on its own behalf and on behalf of the members of the Class, demands judgment against Vensure for:

A. appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

B. any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution;

C. injunctive relief as set forth above, disgorgement of profits and unlawful gains, and/or imposition of a constructive trust on the withheld interest and all amounts earned thereon by Defendants';

D. pre-judgment and post-judgment interest;

E. the costs of suit, including attorneys' fees; and

F. any and all other relief which the Court deems just and proper.

**FURTHER WHEREFORE**, Plaintiff respectfully demands a trial by jury on all counts so triable.

DATED this 25th day of August, 2025.

            **KELLER ROHRBACK L.L.P.**

By *s/ Gary A. Gotto*
    Gary A. Gotto
    3101 North Central Avenue, Suite 1400
    Phoenix, AZ 85012
    Telephone: (602) 248-0088
    ggotto@kellerrohrback.com

    Laura R. Gerber
    (*Pro Hac Vice* forthcoming)
    Michael D. Woerner
    (*Pro Hac Vice* forthcoming)
    Andrew N. Lindsay
    (*Pro Hac Vice* forthcoming)
    **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    Telephone: (206) 623-1900
    lgerber@kellerrohrback.com
    mwoerner@kellerrohrback.com
    alindsay@kellerrohrback.com

    James C. Bradley
    (*Pro Hac Vice* forthcoming)
    Nina Fields Britt
    (*Pro Hac Vice* forthcoming)
    Caleb M. Hodge
    (*Pro Hac Vice* forthcoming)
    **ROGERS PATRICK, WESTBROOK & BRICKMAN, LLC**
    1037 Chuck Dawley Blvd., Bldg. A
    Post Office Box 1007
    Mount Pleasant, SC 29465
    Telephone: (843) 727-6500
    jbradley@rpwb.com
    nfields@rpwb.com
    chodge@rpwb.com

Timothy C. Bailey
(*Pro Hac Vice* forthcoming)
**BAILEY JAVINS & CARTER, LLC**
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
tbailey@bjc4u.com

Andrew Burnett
(*Pro Hac Vice* forthcoming)
**BURNETT INJURY GROUP, LLC**
2661 Riva Road, Building 1000, #1010
Annapolis MD 21401
Telephone: (443) 214-2600
andrew@burnettinjurygroup.com

*Attorneys for Plaintiff American Steel, Inc. and the Putative Class*