Cory Braddock, Bar No. 024668
Patrick Tighe, Bar No. 033885
Taryn Gallup, Bar No. 035002
Reid P. Edwards, Bar No. 038435
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
Email: cbraddock@swlaw.com
　　　ptighe@swlaw.com
　　　tgallup@swlaw.com
　　　redwards@swlaw.com

*Attorneys for Defendants and Intervenor-Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Steel, Inc., individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Vensure Employer Services, Inc., d/b/a Vensure Employer Solutions, and VensureHR, Inc.,<br><br>　　　　　　Defendants,<br><br>Avitus, Inc.,<br><br>　　　　　　Intervenor-Defendant. | Case No. 2:25-cv-03087-DJH<br><br>**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>(Oral Argument Requested) |

Defendants Vensure Employer Services, Inc. ("Vensure") and VensureHR, Inc. ("VensureHR") (together, "Defendants") move to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Class Action Complaint (Dkt. 1) in its entirety. Plaintiff American Steel, Inc. ("ASI" or "Plaintiff") sued Defendants under theories of unjust enrichment, conversion, and alleged violations of the Arizona Consumer Fraud Act ("ACFA") arising out of Employee Retention Credits ("ERC"). Not only does the Complaint improperly lump Defendants together when describing the purportedly fraudulent and tortious conduct at issue, but the Complaint is utterly bereft of any allegations establishing actual facts sufficient to support its claims against both Vensure and VensureHR. The Court should dismiss the Complaint for at least five primary reasons.

First, the Complaint should be dismissed in its entirety for improper group pleading. The Complaint fails to distinguish between the two named Defendants—Vensure and VensureHR—concerning their alleged conduct such that it is entirely unclear which Defendant is alleged to be responsible for which acts. The law is clear that a party cannot assert claims for fraud and intentional torts and not plead with particularity the alleged acts or omissions of each corporate entity defendant that supposedly give rise to these claims.

Second, Plaintiff's ACFA claim is insufficient as a matter of law because such claims are subject to Rule 9(b)'s heighted pleading standard, which cannot be satisfied by Plaintiff's improper group pleading.

Third, Plaintiff's unjust enrichment claim against Defendants fails because Plaintiff does not adequately plead three of the required elements of the claim: a benefit conferred on Defendants, absence of justification for the enrichment, and the absence of an adequate remedy at law.

Fourth, Plaintiff's conversion claim is legally defective because Plaintiff does not adequately plead that it has an immediate right to possess the ERC refund and interest amounts or that Defendants have exercised wrongful control (or any control with respect to the second quarter of the 2021 ERC) over these amounts. The conversion claim fails for

1  the additional reason that such a claim is not viable where a plaintiff, such as ASI, is seeking to collect on a debt that could be paid by money generally.

Finally, Plaintiff's class allegations should be dismissed because, from the face of the Complaint, it is clear that individualized issues and inquiries overwhelm the putative class such that Plaintiff cannot satisfy Rule 23(b)(3)'s predominance requirement.

Before bringing this Motion, the parties met and conferred, and Plaintiff refused to try and correct any of these pleading deficiencies. A certificate of conferral is attached as Exhibit 1. Accordingly, the Court should grant this Motion and dismiss the Complaint without leave to amend and with prejudice.

## I. PLAINTIFF'S THREADBARE ALLEGATIONS

Plaintiff is a Montana-based steel fabrication company. Dkt. 1 ¶ 21. In 2009, Plaintiff hired nonparty and putative Intervenor-Defendant, Avitus, Inc. ("Avitus"), to provide it with various "professional employer" services, including employee administration, payroll administration, and payroll services. *Id.* ¶ 22. Avitus, as a professional employer organization ("PEO"), would also withhold and collect all applicable employment taxes from Plaintiff's employees' paychecks. *Id.*

In March 2020, the United States government enacted several measures to combat the Coronavirus pandemic, including enacting the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Dkt. 1 ¶ 14. The CARES Act's primary aims were, among other things, to help the country's economy, individuals, and employers. *Id.* One of the relief programs offered through the CARES Act was the Employee Retention Credit ("ERC"), which was available to qualifying employers. *Id.* ¶15.

The ERC was a refundable tax credit designed to help businesses retain employees and maintain payroll during pandemic-related disruptions. *Id.* If a client or former client of a PEO sought benefits under the ERC, the PEO would handle the filing of the associated tax forms, including IRS Form 941. *Id.* ¶¶ 16, 18. Plaintiff alleges that the PEO had to complete and submit "a single, aggregate Form 941 encompassing reporting for all clients, which are identified on an attached Schedule R." *Id.* ¶ 11.

As alleged in the Complaint, in or about 2020, Plaintiff claims that "Vensure gained control over" Avitus such that "Vensure has [purportedly] directed and controlled" Avitus's business and "made all substantive decisions regarding the ERC, ERC-related filings, and the payment(s) of any ERC-related funds." Dkt. 1 ¶ 23. Plaintiff, however, defined "Vensure" to refer to two separate and distinct corporate entity Defendants: Vensure and VensureHR. *See id.* at p. 1 (defining Vensure and VensureHR as "collectively, 'Vensure'"). Using the collectively defined "Vensure," Plaintiff further alleges that Defendants have "reported the taxes withheld on ASI's behalf on a quarterly basis using an aggregate IRS Form 941 submitted by Vensure." *Id.* ¶ 23. Plaintiff next claims that, following the passage of the CARES Act, Defendants began sending communications to clients regarding the ERC and the opportunity to obtain benefits under the ERC. *Id.* ¶ 24. Plaintiff alleges that the communications Defendants disseminated omitted information regarding potential entitlement to interest paid out by the IRS on any ERC benefits or that Defendants would retain any interest the IRS paid out on any ERC benefits. *Id.*

Because Plaintiff continued paying its employees during the periods covered by the ERC program, it alleges that it sought to file an ERC claim for the second and third quarters of 2021. Dkt. 1 ¶ 25. Plaintiff then claims that the collectively defined "Vensure submitted this ERC claim to the IRS" for the second and third quarters of 2021 "on ASI's behalf." *Id.*

For the portion of the ERC claim covering the second quarter of 2021, Plaintiff alleges it has not received any refund or interest from Defendants. Dkt. 1 ¶ 29. Plaintiff, however, admits that it is unsure whether Defendants themselves have even received the second quarter of 2021 ERC refund, or accompanying interest, from the IRS. *Id.* ("Plaintiff has not received an explanation from Vensure about whether Vensure has received the ERC refund amount for this filing or the interest . . . from the IRS."). (Indeed, as alleged in Avitus's concurrently filed motion to intervene, the IRS has not processed its Form 941 for the second quarter of 2021 ERC, and thus, no refunds have been issued. Dkt. 19 at 3.)

For the portion of the ERC claim covering the third quarter of 2021, Plaintiff alleges it has received its full refund of $297,076.16 from the collectively defined "Vensure." Dkt. 1 ¶¶ 26-27. However, Plaintiff alleges that it has not received the accompanying interest it is purportedly owed under the ERC for the third quarter of 2021—even though Plaintiff alleges that Defendants have "received" such interest from the IRS. *Id.* ¶ 27.

On these alleged facts, Plaintiff asserts individual and putative class claims against Defendants for unjust enrichment, conversion, and under the ACFA to recover the "interest payment from the IRS" on the ERC claims. Dkt. 1 ¶¶ 48-78.

## II. THE COMPLAINT WARRANTS DISMISSAL UNDER RULE 12(B)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the complaint's factual allegations must sufficiently cross the line from merely "conceivable" to a level of "plausibly suggesting" that the plaintiff is entitled to relief. *Id.* at 557, 570; *Ashcroft*, 556 U.S. at 684 (confirming the "plausibility standard" cited in *Twombly* applies to pleadings in civil actions generally). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Here, ASI's Complaint fails to contain sufficient facts to state plausible claims for relief against both Vensure and VensureHR and should be dismissed for at least the following five reasons.[1]

---

[1] It is unclear what state substantive law applies to Plaintiff's Complaint. Plaintiff is a Montana corporation (Dkt. 1 ¶¶ 1, 21); nonparty Avitus is a Montana corporation (Dkt. 1 ¶ 22; Dkt. 19 at 1); the underlying PEO Agreement between Plaintiff and Avitus is governed by Montana law (Dkt. 19 at Ex. A, § 29); and Defendants Vensure and VensureHR are Arizona corporations (Dkt. 1 ¶¶ 2-3). The Complaint, however, alleges "a substantial part of the events or omission giving rise to the claims occurred in this District,"

- 4 -

### A. The Entire Complaint Must Be Dismissed for Improper Group Pleading.

As an initial matter, the Complaint should be dismissed in its entirety for violating Federal Rule of Civil Procedure 8(a)(2) because the Complaint does not adequately distinguish between the two separate Defendants—Vensure and VensureHR—concerning their alleged conduct. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "claim" to give fair notice that the pleader is "entitled to relief."). Indeed, "[a] plaintiff may not collectively accuse multiple defendants of committing misdeeds through the expedience of the title 'Defendants.'" *Rynn v. McKay*, 2018 WL 3926666, at *2 (D. Ariz. Aug. 16, 2018) (dismissing entire complaint as "deficient under Federal Rule of Civil Procedure 8" where it did not adequately distinguish between defendants' conduct).

Here, in the Complaint, Plaintiff only distinguishes between the individual Defendants Vensure and VensureHR once—namely, in the "Parties" section of the Complaint. Dkt. 1 ¶¶ 2-3. And in the introductory paragraph of the Complaint, Plaintiff then collectively defines both corporate entities as "Vensure." Dkt. 1 at p. 1. Thereafter, and throughout the remainder of the Complaint, Plaintiff lumps together Vensure and VensureHR collectively referring to them as "Vensure." *See generally* Dkt. 1. Furthermore, nowhere throughout the entire Complaint does Plaintiff attempt to distinguish between Vensure's and VensureHR's purportedly wrongful conduct. Instead, Plaintiff alleges in conclusory fashion that as a "direct and proximate result of Vensure's actions" generally, it has suffered injury and economic damages. *See* Dkt. 1 ¶ 30; *see also* Dkt. 1 ¶ 51 (referring to the benefit "Defendants" received;) ¶ 60 (alleging "Defendants" exercised dominion and control over Plaintiff's rights); ¶ 68 (alleging "Defendants" have engaged in unfair and/or deceptive trade practices). The Complaint does not even specify which Defendant distributed the communications that Plaintiff alleges contained the fraudulent omissions. *See* Dkt. 1 ¶ 24 ("Upon information and belief . . . Vensure began sending out

---

(Dkt. 1 ¶ 7) and then asserts an ACFA claim (Dkt. 1 ¶¶ 65-78). Accepting these allegations as true only for purposes of this Motion, Defendants apply Arizona law without conceding or waiving any choice-of-law issues.

- 5 -

communications to its clients"); *id.* ("Vensure sent a communication to its clients that included information about filing ERC claims but failed to discuss Vensure's retention of interest paid out by the IRS on ERC claims"). The Complaint is chock-full of group pleading and never specifically identifies what each Defendant did or failed to do sufficient to support any cause of action as against that specific Defendant.

This type of group pleading is impermissible and warrants dismissal of the Complaint in its entirety. *See e.g.*, *Riehle v. Bank of Am., N.A.*, 2013 WL 1694442, at *2 (D. Ariz. Apr. 18, 2013) (granting Rule 12(b)(6) motion to dismiss where complaint "lump[ed] together" two defendants "without clearly defining" allegations between defendants or "distinguishing the alleged actions" of defendant one from defendant two); *Taylor v. United States*, 2010 WL 729496, at *1 (D. Ariz. Feb. 26 2010) (granting motion to dismiss and holding "Plaintiff's allegations 'are insufficient in that they are ascribed to defendants collectively rather than to individual defendants.'" (citation omitted)).

ASI's improper lumping together of Defendants is particularly problematic under Arizona law. ASI admits that Vensure and VensureHR are Arizona corporations. Dkt. 1 ¶¶ 2-3. And "Arizona law is clear that the 'corporate status will not be lightly disregarded.'" *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 530 ¶ 20 (Ariz. 2020). In other words, under Arizona law, the "corporate veil refers to the 'basic axiom of corporate law that a corporation will be treated as a separate entity unless there is sufficient reason to disregard the corporate form.'" *SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 693-94 (D. Ariz. 2022) (citation omitted). ASI, however, violates this basic axiom of Arizona law when it groups both distinct corporate entities together and alleges that a singular "Vensure" committed various acts or failed to act. Such a tactic permits ASI to lightly disregard the separate corporate status of both Vensure and VensureHR (and presumably putative Intervenor-Defendant Avitus) in violation of Arizona law.

For these reasons, the Court should dismiss the entire Complaint due to impermissible group pleading in contravention of Rule 8(a)(2).

### B. Plaintiff Fails to State a Claim Under the Arizona Consumer Fraud Act.

Plaintiff's ACFA claim (Count Three) is legally defective due to its improper group pleading under Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("[A] party must state with specificity the circumstances constituting fraud . . . ."). To state a claim under the ACFA, Plaintiff must allege sufficient facts showing "[1] a false promise or misrepresentation [2] made in connection with the sale or advertisement of merchandise and [3] a consequent and proximate injury resulting from the [defendant's] promise." *Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, 2024 WL 1256038, at *9 (D. Ariz. Mar. 25, 2024); *see also Kuehn v. Stanley*, 91 P.3d 346, 351 ¶ 16 (Ariz. App. 2004). Because ACFA claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading requirements. *Dickman v. New York Life Ins. Co.*, 2025 WL 3033640, at *4 (D. Ariz. Oct. 30, 2025) ("Claims arising under the ACFA pertain to fraud and are thus subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." (citation omitted)).

As discussed in Section II.A above, the Complaint's allegations do not differentiate between Defendants Vensure and VensureHR. Instead, Plaintiff impermissibly lumps Vensure and VensureHR together as a single-entity defendant. Plaintiff's failure to attribute the purportedly fraudulent acts under the ACFA to specific defendants or otherwise identify the role each defendant played in the allegedly fraudulent scheme warrants dismissal under Rule 9(b). *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (finding "general allegations that the 'defendants' engaged in fraudulent conduct" as "insufficient as a matter of law" because "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant'" and "must at a minimum, identify the role of each defendant in the alleged fraudulent scheme" (cleaned up)).

Indeed, courts in the District of Arizona routinely dismiss ACFA and other fraud claims because a plaintiff alleging fraud under ACFA "must do more than make 'sweeping references' encompassing all of defendants' allegedly fraudulent conduct." *Stejic v. Aurora Loan Servs. LLC*, 2010 WL 4220570, at *2 (D. Ariz. Oct. 20, 2010) (dismissing ACFA

claim); *see also Riehle v. Bank of Am., N.A.*, 2013 WL 1694442, at *4 (D. Ariz. Apr. 18, 2013) (dismissing ACFA claim because, among other reasons, the complaint "lump[ed] together" both defendants and did not "clearly defin[e]" the alleged fraudulent actions of each party); *Stoer Constr. Inc. v. Benson Sec. Sys. Inc.*, 2022 WL 4017412, at *5 (D. Ariz. Sept. 2, 2022) (dismissing complaint containing allegations of fraud, noting that "[g]rouping all defendants together for every factual assertion does not satisfy Rule 9(b)."); *UniCredit Bank Austria AG v. Inmobiliaria y Arrendadora Cuadro S.A. de C.V.*, 2024 WL 5118419, at *12 (D. Ariz. Dec. 16, 2024) (dismissing fraud claim because "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, and instead requires plaintiffs to differentiate their allegations when suing more than one defendant").

Consequently, Count Three for violations of the ACFA is insufficient as a matter of law and requires dismissal because Plaintiffs impermissibly lump Vensure and VensureHR together without identifying the role of each Defendant in the alleged fraud.

### C. Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff's unjust enrichment claim (Count One) fails as a matter of law. To plead a claim for unjust enrichment under Arizona law, Plaintiff must allege facts supporting five elements: "'(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy.'" *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 48 (D. Ariz. 2021) (quoting *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 ¶ 31 (Ariz. App. 2002), *as corrected* (June 19, 2002)). Here, Plaintiff's unjust enrichment claim against Defendants fails for at least four independent reasons.

First, the Complaint's allegations do not sufficiently plead the first requirement of an unjust enrichment claim—namely, that Plaintiff conferred an actual benefit on Defendants. Plaintiff alleges Defendants submitted an ERC claim on its behalf for two time periods: the second quarter of 2021 and the third quarter of 2021. Dkt. 1 ¶ 25. But the Complaint does not plead *any* facts that Defendants actually received a benefit (i.e., an

"enrichment") regarding the ERC claim for second quarter of 2021. In fact, Plaintiff expressly pleads that it does not actually know "whether Vensure has received the ERC refund amount" or "the interest" for the second quarter of 2021 ERC filing. Dkt. 1 ¶ 29. (Indeed, as alleged in Avitus's concurrently filed motion to intervene, the IRS has not processed its Form 941 for the second quarter of 2021 ERC, and thus, no refunds have been issued. Dkt. 19 at 3.) Thus, on the face of the Complaint, Plaintiff has not satisfied the first element of an unjust enrichment claim regarding the second quarter of 2021 ERC claim. Further, because Plaintiff concedes it does not actually know whether Defendants have even received the second quarter of 2021 ERC refund and interest, Plaintiff cannot satisfy the legal requirement of demonstrating that Defendants "actually have and retain[ed] money or a benefit at Plaintiff's expense." *See Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 988 (D. Ariz. 2015) ("Unjust enrichment occurs whenever a person has and retains money or benefits that in justice and equity belong to another.")

Second, the Complaint's allegations do not sufficiently plead the fourth requirement of an unjust enrichment claim: that there is an absence of justification for the enrichment and impoverishment. *Nowhere* in the Complaint does Plaintiff plead any facts concerning a purported lack of justification for Defendants' alleged withholding of any accompanying interest on the second quarter of 2021 and third quarter of 2021 ERC refunds. Instead, Plaintiff states, in a conclusory fashion, that Defendants simply "withheld" the third quarter of 2021 ERC interest payment (Dkt. 1 ¶ 28) and that Plaintiff is not even sure if Defendants themselves have received the second quarter of 2021 ERC refund and interest (Dkt. 1 ¶ 29). Tellingly, neither of these allegations accuse Defendants of withholding the ERC refund and interest payments without justification. Although Plaintiff alleges that the collectively defined "Vensure" provides payroll and tax administration services as a PEO (*see* Dkt. 1 at ¶¶ 8-12), Plaintiff never alleges that it—or any of the putative class members for that matter—paid any compensation for any of the ERC services rendered to them. *See Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1077 (D. Ariz. 2013) (dismissing claim for unjust enrichment where there was justification for defendants' alleged

- 9 -

enrichment); *Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *5 (D. Ariz. June 2, 2022) (dismissing class action unjust enrichment claim as a matter of law where plaintiffs did not allege that they directly paid defendant for its services and, instead, plaintiffs' payments were made to an affiliate of defendant or elsewhere); *Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396, at *6-7 (C.D. Cal. Mar. 31, 2025) (dismissing unjust enrichment claim in data breach class action with prejudice where plaintiffs themselves "did not pay Defendants anything" or otherwise provide defendants with their personal information); *cf. Freeman v. Sorchych*, 245 P.3d 927, 936-37 (Ariz. App. 2011) (for an unjust enrichment claim, "'the mere receipt of a benefit is insufficient' to entitle a plaintiff to compensation" because a plaintiff must show that "it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and the benefit was not 'conferred officiously.'" (citations omitted)). Plaintiff's failure to plead the fourth element (i.e., the absence of a justification) warrants dismissal of its unjust enrichment claim.

Third, the Complaint's allegations do not sufficiently plead the fifth element of an unjust enrichment claim because Plaintiff has an adequate remedy at law. A claim for unjust enrichment will not lie where a plaintiff has a contractual remedy. *See Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.*, 2019 WL 669770, at *4 (D. Ariz. Feb. 19, 2019) ("an element of unjust enrichment is that no contractual remedy exists" and holding that it was not plausible that plaintiff could state an unjust enrichment claim that did not depend on the relevant agreement). Here, the Complaint alleges that in 2009, Plaintiff hired nonparty Avitus "to provide employee administration, payroll administration, and payroll tax services on its behalf." Dkt. 1 ¶ 22. The Court's own record reflects that there is a PEO Agreement for services between Plaintiff and Avitus and that Plaintiff is actually suing Avitus for services and issues arising under that contract in Montana state court. Dkt. 19 at Exs. A, E.[2] Thus, an adequate remedy at law exists for Plaintiff's alleged unjust enrichment

---

[2] "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Federal district courts thus "may take judicial notice of court filings and other matters of public record," *Reyn's Pasta*

- 10 -

1   claim concerning the purported ERC refund and interest amounts. That remedy is to bring
2   an action against Avitus, including for breach of the PEO Agreement because that is the
3   contract upon which Plaintiff's purported damages hinge.

4   Finally, as discussed above, Plaintiff's unjust enrichment claim fails for the separate
5   and additional reason that it does not specify the conduct of each of the Defendants—
6   Vensure and VensureHR—with respect to the allegedly unjust enrichment. Indeed, courts
7   have dismissed unjust enrichment claims where, as here, a plaintiff merely alleges it "*might
8   have paid the wrong person*" thereby failing to adequately plead a nexus between the
9   payment made by a plaintiff and a particular defendant. *Nickolas v. Structured Asset
10  Mortgage Inv. II Tr. 2006-AR8*, 2013 WL 11826532, at *2-3 (D. Ariz. July 18, 2013)
11  (dismissing variant of unjust enrichment claim where complaint "d[id] not
12  straightforwardly allege that [plaintiff] made payments to" specific defendants); *see also
13  D'Agostino v. Comenity Cap. Bank*, 2025 WL 69373, at *7 (D. Ariz. Jan. 10, 2025)
14  (dismissing unjust enrichment claim for failure to adequately plead connection between
15  alleged benefit and alleged impoverishment). Because Plaintiff's unjust enrichment
16  allegations lump Defendants together without any distinction, the Court should dismiss the
17  unjust enrichment claim as against Defendants.

18  For all of these reasons, Plaintiff's claim for unjust enrichment against Defendants
19  should be dismissed.

### D. Plaintiff Fails to State a Claim for Conversion.

21  To allege a conversion claim under Arizona law, Plaintiff must allege that
22  Defendants intentionally exercised "'wrongful dominion or control over personal property
23  in denial of or inconsistent with'" its rights. *Hannibal-Fisher v. Grand Canyon Univ.*, 523
24  F. Supp. 3d 1087, 1098 (D. Ariz. 2021) (quoting *Case Corp. v. Gehrke*, 91 P.3d 362, 365

---

*Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) and "of the court's own records," *Chandler v. United States*, 378 F.2d 906, 910 (9th Cir. 1967). Accordingly, under Federal Rule of Evidence 201, Defendants move the Court to take judicial notice of the existence of the PEO Agreement between Plaintiff and Avitus and the existence of Plaintiff's complaint against Avitus in Montana state court. The existence of these records are the appropriate subject of judicial notice because they are court filings and matters of public record, including documents in the Court's own record.

- 11 -

(Ariz. App. 2004)). A plaintiff "'must have had the right to immediate possession of the personal property at the time of the alleged conversion.'" *Id.* Here, Plaintiff's conversion claim (Count Two) against Defendants fails for at least two reasons.

<u>First</u>, Plaintiff has failed to plausibly allege that it has an immediate right to possess the ERC refund and interest amounts that are the subject of the Complaint. Nowhere in the Complaint does Plaintiff plead any *actual* facts establishing that it has a confirmed right to possess the second quarter of 2021 ERC refund and interest amounts or the third quarter of 2021 ERC interest amount. Dkt. 1 ¶¶ 26-29. Implicit in the Complaint is the *assumption* that Plaintiff is entitled to these amounts, but nowhere does Plaintiff provide any factual bases for its claim of right over these amounts. Indeed, there could be various reasons that Defendants have not remitted these amounts (assuming they are even owed) to Plaintiff, including but not limited to, (i) that Plaintiff has failed to compensate or pay for the ERC services rendered, or (ii) that the IRS has not processed or delayed payment of these sums or has imposed offsets or penalties against Plaintiff or the like. And, with respect to the second quarter of 2021 ERC refund and interest amounts, the Complaint's own allegations specifically undercut Plaintiff's claim of an immediate possessory interest in those funds or that Defendants have exercised wrongful dominion or control over those funds because Plaintiff admits that it does not know whether the IRS has even issued any amounts to Defendants. *See* Dkt. 1 ¶ 29 ("Plaintiffs has still not received its refund from Vensure for the ERC filing for the second quarter of 2021. Plaintiff has not received an explanation from Vensure about whether Vensure has received the ERC refund amount for this filing or the interest for this refund amount from the IRS."). In such situations, courts have dismissed conversion claims for failure to plead an "immediate right to possession of the funds in dispute." *Yakima Co., Inc. v. Lincoln Gen. Ins. Co.*, 583 F. App'x 744, 777 (9th Cir. July 23, 2014) (affirming dismissal of conversion claim); *see also Armbruster*, 953 F. Supp. 2d at 1077-78 (dismissing conversion claim where plaintiff failed to plausibly allege he owned the subject property).

**Second**, Plaintiff has failed to plausibly allege a conversion claim against Defendants because its alleged injury is premised solely on a purported debt that could be paid by money generally. A conversion claim "cannot be maintained to collect on a debt that could be satisfied by money generally" and only where "money 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established'" can it be the subject of a conversion claim. *Hannibal-Fisher*, 523 F. Supp. 3d at 1098. One purpose of this limitation is "to prevent a contract dispute between a debtor and creditor from turning into a tort action." *Mountains of Spices LLC v. Lafrenz*, 653 F. Supp. 3d 665, 678 (D. Ariz. 2023), *vacated in part on other grounds*, 2023 WL 3230989 (D. Ariz. May 3, 2023), *on reconsideration*, 2023 WL 3819293 (D. Ariz. June 5, 2023) (applying *Koss Corp. v. Am. Exp. Co.*, 309 P.3d 898, 914 ¶ 54 (Ariz. App. 2013), *as amended* (Sept. 3, 2013)).[3]

Here, the entire subject of the Complaint concerns Plaintiff's request for the return of money in the form of interest on ERC refunds. Dkt. 1 ¶¶ 26-29. Courts have dismissed similar conversion claims such as the one Plaintiff asserts here where the conversion claim is premised on "seek[ing] to collect on a debt that could be paid by money generally." *Hannibal-Fisher*, 523 F. Supp. 3d at 1098 (dismissing plaintiffs' conversion claim with prejudice where "there is no reason that Plaintiffs' alleged harm could not be remedied by a payment from [defendant's] general account."). The same reasoning applies to this case. Plaintiff has not alleged that Defendants could not simply remedy the purported harm by simply paying a general sum of money. *See Hannibal-Fisher*, 523 F. Supp. 3d at 1099 ("Plaintiffs' argument fails because they cannot explain how their alleged harm could not

---

[3] The concern about the improper tortification of a breach of contract claim is particularly salient here where Plaintiff has a PEO Agreement with Avitus and Avitus performed the ERC services for Plaintiff. *See* Dkt. 19 at 2, Ex. A. *See also Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 ¶ 12 (Ariz. 2010) (explaining that the economic loss doctrine limits "a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property"); *Sitevoice, LLC v. Gyrus Logic, Inc.*, 2014 WL 4722329, at *6 (D. Ariz. Sept. 23, 2014) (dismissing conversion claims under Rule 12(b)(6) as barred by the economic loss rule because the property that was the subject of conversion claims were the subject of the contracts); *TSYS Acquiring Sols., LLC v. Elec. Payment Sys., LLC*, 2010 WL 3882518, at *4 (D. Ariz. Sept. 29, 2010) (same).

- 13 -

be remedied by the payment of money generally."); *see also Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 966-67 (D. Ariz. 2021) (dismissing with prejudice conversion claims where plaintiff failed to show he was entitled to "immediate possession of the money" at the time of the conversion and where such alleged debt "could be satisfied by money generally"). Further, Plaintiff even admits that such ERC interest cannot be described, identified, or segregated because Plaintiff alleges that Defendants must "complete[] a single, aggregate Form 941 encompassing reporting for all clients, which are identified on an attached Schedule R." Dkt. 1 ¶ 11.

For all of these reasons, Plaintiff's claim for conversion against Defendants should be dismissed.

### E. The Class Allegations Should Be Dismissed or Stricken.

A party may move to dismiss or strike a plaintiff's class allegations before the plaintiff has moved to certify its class. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification at issue before the district court or prohibits a defendant from seeking early resolution of the class certification question."). Indeed, under Rule 23(c)(1), courts are required to determine whether a class action can be maintained "[a]t an early practicable time . . . ." Fed. R. Civ. P. 23(c). A court may strike class allegations "'when it is clear from the face of the complaint that no class can be certified.'" *Naiman v. Alle Processing Corp.*, 706 F. Supp. 3d 892, 901 (D. Ariz. 2020) (quoting *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016)). Here, the Court should dismiss Plaintiff's class allegations because, as pleaded, the putative class cannot satisfy Rule 23's requirements.

The Complaint proposes the following putative class:

> For the period of January 1, 2020, to present, all current and former individuals and entities that have used Defendants to file for and/or claim ERC benefits and received at least one ERC benefit refund check but were not remitted the interest paid by the IRS thereon.

- 14 -

Dkt. 1 ¶ 36. Given this definition, material factual variations will exist as to each putative class member such that the action will become unmanageable. Plaintiff proposes one nationwide class, comprised of putative class members from 50 different states, all with varying statutes of limitations governing the unjust enrichment and conversion claims. Moreover, because the putative class purports to include members dating back to January 1, 2020, this time period would necessarily include individuals whose claims may have long-since accrued and are now time-barred. But this limitations analysis can only be undertaken on a case-by-case basis, which undermines Rule 23(b)'s predominance requirement. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152-53 (N.D. Cal. 2010) (striking class allegations where "substantial statute of limitations issues are likely to complicate the class claims" and "there still would have to be an individualized inquiry as to each class member's individual circumstances.").

Likewise, for the ACFA claim, it is clear that the class allegations fail to satisfy Rule 23(b)'s predominance requirement. Litigating the ACFA claim on a class-wide basis would be unmanageable at it would require "an individualized inquiry into the factual circumstances relating to each potential class member" and their "actual reliance" on Defendants' purported communications. *Naiman*, 706 F. Supp. 3d at 902 (striking class allegations because the ACFA requires proof of actual reliance that would require proof by each proposed class member).

Finally, as evidenced by the PEO Agreement between Plaintiff and nonparty Avitus, the different class members have entered different PEO Agreements for services with different subsidiaries, that vary and are governed by different state law and regulations. Moreover, given how the IRS has processed and decided different ERC claims for different class members, an individualized inquiry into the factual circumstances of how the IRS has handled and treated the particular ERC claims for each class member will be required. In short, because each class member has different underlying PEO agreements and different outcomes with the IRS regarding their particular ERC claims, individual issues would predominate over class issues. *See, e.g., Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134,

1138-39 (9th Cir. 2022) (affirming denial of class certification for claims for breach of contract or unfair trade practices because "to show liability for breach of contract or unfair trade practices, Plaintiffs must also show an injury. And to show an injury will require an individualized determination for each plaintiff"); *Romes v. Garrison Prop. & Cas. Ins. Co.*, 2024 WL 4452781, at *6-7 (D. Ariz. Oct. 9, 2024) (striking class allegations for breach of contract because "the actual evidence required to prove harm and thereby a breach depends on reasonableness and the individual circumstances of each proposed class member").

Given all of the individualized issues that arise under the class allegations, Plaintiff cannot maintain its class action under Rule 23(b)(3) because, on the face of the Complaint, common questions of law and fact do not predominate. Accordingly, the Court should dismiss the class allegations.

## III. CONCLUSION

For all of these reasons, Defendants request that the Court dismiss the Complaint in its entirety. Because the filing of the Complaint followed the parties' conferral regarding these deficiencies and because Plaintiff refused to make any amendments to try and cure their defective Complaint, the dismissal should be with prejudice.

Dated this 17th day of November, 2025.

SNELL & WILMER L.L.P.

By: *s/ Cory Braddock*
Cory Braddock
Patrick Tighe
Taryn Gallup
Reid P. Edwards
One East Washington St., Ste. 2700
Phoenix, AZ 85004

*Attorneys for Defendants and Intervenor-Defendant*

- 16 -