**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| American Steel Incorporated, | No. CV-25-03087-PHX-DJH |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Vensure Employer Services Incorporated, et al., | |
| Defendants. | |

**TO HON. DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:**

Before the Court and ripe for disposition are (1) Defendants' Motion to Dismiss Class Action Complaint (Doc. 22); (2) Avitus, Inc.'s Motion to Intervene (Doc. 19); and (3) Avitus, Inc.'s Motion for Protective Order (Doc. 20). The Court referred this case to undersigned "for all pretrial proceedings" (Doc. 23 at 8), but the first two instant motions are ultimately within the province of the District Judge. Specifically, motions to dismiss fall within 28 U.S.C. § 636(b)(1), and (at minimum), permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure is "subject to the discretion of the district judge." *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (citations omitted). Accordingly, undersigned submits this Report and Recommendation on the first two motions and enters an Order as to the third. In addition, because undersigned is able to make a recommendation based on the papers, the request for oral argument will be denied.

**I.     PROCEDURAL HISTORY**

On August 25, 2025, Plaintiff, American Steel Inc. ("Plaintiff"), filed its putative

Class Action Complaint against Defendants Vensure Employer Services, Inc., d/b/a Vensure Employer Solutions, and VensureHR, Inc. (collectively, "Defendants"). (Doc. 1.) Plaintiff alleges it is a Montana corporation that hired Avitus, Incorporated ("Avitus") in 2009 to "provide employee administration, payroll administration, and payroll tax services on" Plaintiff's behalf. (*Id.* at ¶¶ 1, 22.) Plaintiff further alleges that "around 2020," Defendants, both Arizona corporations, "gained control over Avitus." (*Id.* at ¶¶ 2-3, 23.) Plaintiff alleges Defendants perform those payroll-related services on Plaintiff's behalf. (*Id.* at ¶¶ 1-4.) Plaintiffs further allege Defendants failed to remit to Plaintiffs interest paid by the Internal Revenue Service ("IRS") on accrued Employee Retention Credits ("ERCs") under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. (*Id.* at ¶¶ 14-19.) Plaintiffs claim Defendants "kept the interest the IRS paid out on the ERC refunds for its own use and benefit at its clients' expense." (*Id.* at ¶ 19.)

Plaintiff brings suit on behalf of itself and the following putative Class: "For the period of January 1, 2020, to present, all current and former individuals and entities that have used Defendants to file for and/or claim ERC benefits and received at least one ERC benefit refund check but were not remitted the interest paid by the IRS thereon." (Doc. 1 at ¶ 36.) Plaintiff's claims are as follows: Count One – Unjust Enrichment, Count Two – Conversion, and Count Three – Violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 *et seq.* (*Id.* at ¶¶ 48-78.) As relief, Plaintiff seeks damages, injunctive relief, pre- and post-judgment interest, and attorney's fees and costs. (*Id.* at 16.)

After Defendants were served, Avitus filed the instant Motion to Intervene (Doc. 19) and Defendants filed their Motion to Dismiss (Doc. 22). Meanwhile, the District Judge entered the Rule 16 Scheduling Order, in which the referral to undersigned for pretrial proceedings was made. (Doc. 23.) The instant Motions were fully briefed, and the District Judge temporarily stayed discovery until resolution of the Motion to Dismiss. (Doc. 37.) Undersigned notes that the instant motions are sufficiently briefed and may be addressed on the papers; thus, undersigned recommends oral argument be denied.

///

## II.    MOTION TO DISMISS

Defendants move to dismiss under Rule 12(b)(6) under the Federal Rules of Civil Procedure, arguing that Plaintiff has improperly grouped Defendants together, Plaintiff's claims are insufficiently pled, and the putative Class should be stricken under Rule 23 of the Federal Rules of Civil Procedure.  (*See* Docs. 22, 38.)  Plaintiff opposes the Motion. (Doc. 29.)

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that "a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (citations and quotations omitted).  In addition, when "a unified course of fraudulent conduct" is alleged and plaintiff relies "entirely on that course of conduct as the basis of" a claim, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (internal quotation marks and ellipsis in original)) (applying 9(b) heightened pleading standard to entire complaint where only state consumer protection claims pled).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. (*citing *Twombly*, 550 U.S. at 555). A motion to dismiss may also be granted "where there is . . . a lack of a

cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citations omitted). When considering a 12(b)(6) motion, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (quoting *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008)).

In deciding a motion to dismiss, the Court generally should confine itself to the pleadings.  If the Court "considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citations omitted).  However, "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" pursuant to Fed. R. Evid. 201(b) may be considered without converting a 12(b)(6) motion to a summary judgment motion.  *Id.* at 908-09 (citations omitted).  In addition, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 908 (citations omitted).

### B. Analysis

Undersigned will consider each of Defendants' attacks on the Complaint in turn.

1. Collective Pleading

First, Defendants argue the Complaint should be dismissed because Plaintiff impermissibly lumps both Defendants together. (*See* Doc. 22 at 6-7.)  Defendants further contend Plaintiff's collective pleading disregards the corporate form, in violation of Arizona law.  (*See id.* at 6.)

"A collectively pleaded complaint may fail to provide fair notice to a defendant, where there are multiple defendants and claims, and the complaint fails to differentiate among them." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 762 (9th Cir. 2025).  "On the other hand, a complaint need not distinguish between defendants that had the exact same role in a fraud." *United States ex. rel Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

"A good claim against one defendant did not become inadequate simply because a codefendant was alleged to have committed the same wrongful acts." *Id.* Indeed, if "one course of conduct jointly pursued by … closely related corporate defendants" is alleged, collectively pleading of those defendants is permissible so long as the complaint "provides sufficient notice of the claims against them." *See Briskin*, 135 F.4th at 762.

In *Briskin*, the Ninth Circuit found that a complaint that collectively pled three corporate defendants engaged in the same scheme passed 12(b)(6) muster. 135 F.4th at 762. Importantly, the Circuit observed that the complaint "generally describe[d] each company's role in the alleged" scheme. *Id.* Similarly, in *Blake v. Dierdorff*, the Ninth Circuit allowed collective pleading in the corporate fraud context when the "complaint provid[ed], in nineteen separate paragraphs, the date of each of these publications, specific descriptions of the representations made, the reasons for their falsity, and, where possible, the role of the individual defendants in preparation and dissemination." 856 F.2d 1365, 1369 (9th Cir. 1988).

Thus, where possible, individual defendants' actions should be identified in the complaint. *See Briskin*, 135 F.4th at 762; *see Blake*, 856 F.2d at 1369; *see also Solar Optimum, Inc. v. Elevation Solar LLC*, No. CV-23-00135-PHX-SMB, 2024 WL 1961858, at *5 (D. Ariz. May 3, 2024) (finding collective pleading permitted where each individual defendant's participation was described before collectively grouping); *see also Avrahami v. Clark*, No. CV-19-04631-PHX-SPL, 2020 WL 2319922, at *2 (D. Ariz. May 8, 2020) (finding same where the role(s) and actions of each group of defendants was pled). Although the requirement "may be relaxed as to matters within the opposing party's knowledge" in the corporate fraud context, "[t]o overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted).

In the case at bar, Plaintiff argues its Complaint "permissibly alleges the closely-

related corporate Defendants collectively engaged in the same conduct at issue." (Doc. 29 at 11.) Plaintiff further urges that pleading standards be relaxed because "Defendants have exclusive information, including about their inner workings, corporate relationship, and roles in the alleged misconduct." (*Id.*) Plaintiff maintains "there is no real way for Plaintiff to distinguish between Defendants absent discovery." (*Id.* at 12.) In making these arguments, Plaintiff points to various cases in which dismissal was denied where there was a parent-subsidiary relationship between defendants, defendants shared a corporate brand name and website, and the like. (*See id.* at 11-12.) In support of its position, Plaintiff further directs the Court to various exhibits, including a printout of a website of one of the named Defendants; Defendants' respective information on file with the Arizona Corporation Commission that show that the same address/common officers for both Defendants; and a corporate disclosure statement filed in a different case in a different district court indicating "Vensure HR, Inc. is a wholly-owned subsidiary of Vensure Employer Services, Inc." (*See* Doc. 30-1.) Plaintiff asks the Court to take judicial notice of same. (Doc. 29 at 12, n.3.) Defendants counter, *inter alia*, that the cases Plaintiff cites are distinguishable and Plaintiff cannot rest on a blanket statement regarding both Defendants in its Complaint and merely note they are affiliated to overcome their pleading deficiencies. (*See* Doc. 38 at 2-5.) Defendants also argue that judicially noticing a website for a private company is improper and cannot be considered for its truth if noticed, and they contend the website of one of them is "irrelevant" to the Motion because it does not establish alter-ego liability. (*See* Doc. 38 at 5-6.)

a. Judicial notice

At the outset, undersigned makes clear that the Motion to Dismiss will not be converted to a motion for summary judgment. Undersigned will consider only "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" pursuant to Fed. R. Evid. 201(b). *See Ritchie*, 342 F.3d at 908-09.

Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to

reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). And "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In other words, if a document is subject to varying interpretations and there is a reasonable dispute as to what the document establishes, judicial notice is not permitted. *See id.* (citing *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

Plaintiff asks the Court to take "judicial notice of the Vensure.com website, the cited court filing, and the corporate headquarters addresses listed in secretary of state filings as matters not subject to reasonable dispute." (Doc. 29 at 12, n.3.) Plaintiff cites two cases, both of which concern public court documents or public agency's websites. (*See id.* (citing *Poll v. Stryker Sustainability Sols., Inc.*, No. CV 13-440-TUC-CKJ, 2014 WL 199150, at *2 (D. Ariz. Jan. 17, 2014) (taking judicial notice of a document filed in another court and documents found on a federal government website) and *Reyn's v. Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 941, 746 n.6 (9th Cir. 2006) (judicially noticing documents filed in another federal lawsuit).)

In light of the case law above, the Court agrees that it may take judicial notice of documents filed in other cases and government websites. Accordingly, it takes judicial notice of Exhibits E through G to the Declaration in support of Plaintiff's Response to the Motion to Dismiss, which are a corporate disclosure statement filed in a different lawsuit and the "Entity Information" regarding each Defendant on the Arizona Corporation Commission's website, respectively. (*See* Doc. 30-1 at 29-39.)

The Court will not, however, take judicial notice of Exhibits A through D, which are printouts of webpages associated with the site vensure.com. (*See* Doc. 30-1 at 1-28.) "Prior decisions from this district have held judicial notice is not appropriate for private websites." *U-Haul Int'l Inc. v. Public Storage Operating Co.*, No CV-24-03610-PHX-MTL, 2025 WL 2419950, at *1 (D. Ariz. Aug. 12, 2025) (citing *ThermoLife Int'l LLC v.*

- 7 -

*Neogenis Labs Inc.*, CV-18-02980-PHX-DWL, 2021 WL 1400818, at *2 (D. Ariz. Apr. 14, 2021)). This is because "[p]rivate websites are often 'marketing tool[s]...full of imprecise puffery that no one should take at face value.'" *Id.* (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 236-37 (3rd Cir. 2007) (alterations in original)). While some apparent aspects of the website (e.g., a web address (vensure.com) being used for VensureHR) may not pose a risk of "puffery" per se, the "ownership" or "use" of the website by a specific entity or entities is subject to varying interpretations and there is a reasonable dispute as to what the website establishes. Thus, judicial notice will not be taken of Exhibits A through D.

b. Recommendation as to collective pleading

First, the Court observes that the Complaint is extremely limited as to its description of the roles of, or even the relationship between, Defendants. The first sentence of the Complaint states: "Plaintiff American Steel, Inc., individually and on behalf of all others similarly situated, brings this class action complaint against Defendants Vensure Employer Services Inc. d/b/a Vensure Employer Solutions, and VensureHR, Inc. (collectively, 'Vensure')." (Doc. 1 at 1.) From that point forward, Plaintiff makes no attempt to distinguish between Defendants in any way, save for the recitation of the parties in Section I of the Complaint. (*See* Doc. 1.) Rather, the Complaint consistently describes Defendants as a singular organization (e.g., "Vensure is a professional employer organization . . . that provides business administration services . . . " (*id.* at ¶ 8)) and Defendants' actions as singularly-taken (e.g., "Vensure determines the federal and state employment taxes believed to be owed . . . "; "Vensure was responsible for determining and/or verifying the amount of the ERC benefits for its clients"; "Vensure failed to remit the interest paid out by the IRS that accrued on the ERC benefits to its clients"; "Vensure has sent numerous standardized communications that similarly provided information regarding the ERC and solicited the filing of ERC claims through Vensure to clients) (*id.* at ¶¶ 10, 18-19, 24). In addition, Plaintiff alleges that it originally contracted with Avitus in 2009, and "Vensure gained control over Avitus" in approximately 2020. (*Id.* at ¶¶ 22-23.)

Moving to the enumerated counts of the Complaint, Plaintiff similarly makes no attempt to distinguish between Defendants in their actions or roles. (*See id.* at ¶¶ 48-78.) Indeed, nowhere in the Complaint does Plaintiff even allege that one Defendant is the parent and the other is a subsidiary. (*See* Doc. 1.) It is only when the Court looks to the judicially-noticed corporate disclosure statement that was filed in another case that their relationship becomes apparent. (*See* Doc. 30-1 at 31) ("VensureHR Inc. is a wholly-owned subsidiary of Vensure Employer Service, Inc.").

Plaintiff's pleading therefore is distinguished from the cases Plaintiff cites in its Response. Plaintiff cites to *Briskin* (Doc. 29 at 10-11), but as this Court noted *supra*, the complaint in *Briskin* "generally describe[d] each company's role in the alleged" scheme and provided further detail. *See Briskin*, 135 F.4th at 762. No such delineation regarding Defendants' roles is found in the Complaint at bar. (*See* Doc. 1.) The same distinction holds for other cases cited by Plaintiff. *See Tivoli LLC v. Sankey*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015) (finding complaint's factual allegations "explain[ed] in sufficient detail each entity's allegedly culpable conduct to put Defendants on notice of the claims); *see Keskinen v. Lush Handmade Cosms. LLC*, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025) (finding the complaint identified each role played by each defendant-entity and alleged that defendants had "acted in concert", and where complaint particularly described the relationship between the defendants and their own collective reference on the company website).

Plaintiff further cites *Silingo*, in which the Circuit reiterated that "a complaint need not distinguish between defendants that had the exact same role in a fraud." (*See* Doc. 29 at 11); *Silingo*, 904 F.3d at 678. But the Complaint in this case does not plead that Defendants played the same role; rather, it simply collectively refers to Defendants in the first line of the Complaint and proceeds from there. In essence, the Complaint seems to assume that because of Defendants' relationship as parent-subsidiary (which again, is not pled), Defendants are interchangeable and acted in the same way, even though none of that is alleged, much less described. (*See* Doc. 1.) A "parent-subsidiary relationship . . . does

not automatically create liability for" the parent company. *iGolf, Inc. v. Bushnell Holdings, Inc.*, 2025 WL 875913, at \*2 (S.D. Cal. Mar. 4, 2025). This is because a parent corporation is not generally liable for its subsidiary's acts. *Id.* (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Therefore, while pleading standards may indeed be relaxed in a corporate fraud context, there must be more than collective, bare, or conclusory assertions in the Complaint to pass 12(b)(6) muster.

Plaintiff further cites other cases to support the proposition that because Plaintiff lacks sufficient information to distinguish between Defendants at this early stage, collectively pleading is permitted. (*See* Doc. 29 at 12-13.) Again, though, this effort suffers the same, basic flaw as described above. In the cases Plaintiff cites, the plaintiffs made some attempt in their complaints to distinguish between the defendants. Plaintiff made no such effort in this case. First, Plaintiff cites to *Merritt v. Yavone, LLC*, No. 6:15-CV-0269-TC, 2015 WL 9256682 (D. Or. Nov. 5, 2015). (Doc. 29 at 13.) In *Merritt*, the complaint spent "an entire section identifying the roles – as plaintiff notes to the best of plaintiff's knowledge at this early stage of litigation – that each defendant plays in the alleged fraud." 2015 WL 9256682, at \*2. Plaintiff also cites to *MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 931 (D. Nev. 2022). (Doc. 29 at 13.) But in *MST Mgmt.*, the plaintiffs alleged the entity-defendants "and their officers and principals" engaged in a fraud and included "details about each individual" defendant in the complaint. 584 F. Supp. 3d at 932. Certainly, including every detail about each defendant and their separate role(s) is not required at the pleading stage. But collective pleading without an attempt in any regard to distinguish between Defendants or their roles is not supported by the case law.

Because Plaintiff has not sufficiently distinguished between Defendants in this case, undersigned will recommend the Complaint be dismissed on that basis alone. However, to provide the District Judge with a more thorough analysis, the additional bases for the dismissal motion will be considered. Undersigned will also discuss leave to amend. Similarly, undersigned will consider the Motion to Intervene as well.

## 2. Sufficiency of Count One (Unjust Enrichment)

Defendants further contend Count One fails to state a claim for unjust enrichment. (*See* Doc. 22 at 9-12.)

"To recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (citations omitted).[1] "[U]njust enrichment is a form of restitutionary relief available upon either implied in fact contract or quasi-contractual grounds." *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) (quotations and citations omitted). But Arizona law specifies that the defendant's receipt of a benefit is not enough to prove unjust enrichment; the plaintiff must show that they conferred a benefit. *Freeman*, 245 P.3d at 936-37. "[A] plaintiff must show that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not conferred officiously." *Id.* (quotations and citations omitted). Moreover, unjust enrichment is a "flexible equitable remedy which is available whenever the court finds that the defendant . . . is obliged by the ties of natural justice and equity to make compensation for the benefits received." *Hannibal-Fisher,* 523 F. Supp. 3d at 1097 (quotations and citations omitted).

Defendants claim Plaintiff has failed to sufficiently plead an enrichment and an absence of justification for the enrichment and impoverishment, and Defendants further argue Plaintiff has an adequate remedy at law. (Doc. 22 at 9-12.) Plaintiff counters that the Complaint alleges Defendants improperly held interest on the ERC benefits for the third quarter 2021 and Defendants kept that interest despite having no legal right to do so, and Plaintiff emphasizes that the contract between it and Avitus is silent as to ERC benefits.

---

[1] Undersigned notes that for purposes of analysis at this stage, Arizona law is applied. No party has argued that another state's law controls, but all parties have acknowledged Montana law governs the contract between Plaintiff and non-party Avitus. (*See* Doc. 22 at 5 n.1 and Doc. 29 at 14 n.5.) The parties all apply Arizona law at this stage (*see id.*), and the Court will do the same.

- 11 -

(Doc. 29 at 15-17.)  In reply, Defendants essentially abandon their first challenge to this claim, due to the clarification by Plaintiff regarding which quarter of benefits this claim is based.  (*See* Doc. 38 at 8.) Defendants, though, continue by arguing that because Plaintiff never intended to pay for ERC services, Plaintiff has not alleged a lack of justification for the enrichment or impoverishment, and Defendants further the contract with Avitus provides an adequate remedy.  (*See id.* at 8-10.)

Taking Plaintiff's allegations as true, as it must, the Court finds Plaintiff has sufficiently pled the unjust enrichment claim.  First, Plaintiff alleges in the Complaint that it is the true owner of ERC benefits paid by the IRS under 26 U.S.C. §§ 6621(a)(1) and 6611 because Plaintiff is the taxpayer.  Because Plaintiff is the taxpayer, it follows that Plaintiff, rather than Defendants, would be entitled to the ERC benefits.  Accordingly, absence of justification would be present.  Second, "[t]he mere existence of a contract governing the dispute does not automatically invalidate" an unjust enrichment claim. *See Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1024, 1030 (D. Ariz. 2003).  In addition, the contract between Plaintiff and Avitus did not specifically include ERC benefits because those benefits did not exist at the time the contract was entered; thus, it is plausible Plaintiff could be left without a theory of recovery under contract. Alternatively pleading the theory of unjust enrichment is permitted. *See id.* at 1029.  Thus, undersigned would recommend the Motion be denied as to the unjust enrichment claim if the Court were to elect not to grant the Motion on collective pleading grounds.

### 3.  Sufficiency of Count Two (Conversion)

Defendants also argue Plaintiff has insufficiently pled conversion in Count Two. (*See* Doc. 22 at 12-15.)

Under Arizona law, conversion is defined as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990)). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the

personal property at the time of the alleged conversion." *Id.* (citations omitted). "A conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if the money can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1098 (D. Ariz. 2021) (internal quotations and citations omitted).

Here, Defendants argue first that Plaintiff failed to allege sufficient facts that it had a right to possess the interest for the third quarter's ERC credits.  (Doc. 22 at 13.) Undersigned disagrees.  Taking Plaintiff's allegations at true, as it must at this stage, the Complaint states Defendants[2] received an interest payment to which Plaintiff was entitled and refused to return it upon Plaintiff's request.  (Doc. 1 at ¶¶ 12-13, 17-19, 25-29.)  Thus, this basis for relief in the Motion is not persuasive.

Defendants next argue that "Plaintiff has failed to plausibly allege a conversion claim . . .  because its alleged injury is premised solely on a purported debt that could be paid by money generally."  (Doc. 22 at 14.)  Plaintiff counters that it has specifically identified the funds to be returned to it, as they were described by Defendants "on a Schedule R attached to an aggregated 941 filing." (Doc. 29 at 19.)  Plaintiff further argues that the interest on the amount can be readily identified pursuant to 26 U.S.C. § 6621(a)(1). (*Id.*)  Finally, Plaintiff contends the amount owed here is not a debt, because Defendants never had a right to control the interest owed in the first place; therefore, Plaintiff argues, the money cannot be characterized as a debt owed.  (*Id.* at 20.)

As this Court has previously observed, "many limitations on conversion actions for money are intended to prevent a contract dispute between a debtor and a creditor from turning into a tort action." *Mountains of Spices LLC v. Lafrenz*, 653 F. Supp. 3d 665, 678 (D. Ariz. 2023), *vacated in part on other grounds by Mountains of Spices LLC v. Lafrenz*, No. CV-21-01497-PHX-JAT, 2023 WL 3230989 (D. Ariz. May 3, 2023).  "Where funds

---

[2] As discussed *supra*, the failure to attempt to delineate between roles of Defendants is grounds for dismissal alone.  However, for purposes of continuing the analysis of individual claims, undersigned will assume *arguendo* that collective pleading is properly accomplished in the Complaint.

are fraudulently obtained, however, the recipient never obtains a right to exercise dominion or control over the money, and the money continues to belong to its owner just as it would where it has been stolen by a thief." *Id.* (internal punctuation and citations omitted). In that case, the Court concluded that because the complaint alleged the funds in question were supposed to be treated "in a specific manner" and they "were obtained fraudulently," with "the money rightfully belong[ing] to Plaintiff at all times," the prohibition on conversion claims "between debtors and creditors do not apply." *Id.* Here, the Complaint alleges (and it must be taken as true) that Defendants were not entitled to receive the interest that they withheld from Plaintiffs.[3] Thus, the fact that money may be used to satisfy the action is not fatal to the conversion claim. Undersigned would recommend the Motion be denied as to the conversion claim if collective pleading were not already a basis for dismissal.

### 4. Sufficiency of Count Three (Arizona Consumer Fraud Act)

Additionally, Defendants argue Count Three fails to sufficiently plead a claim under Arizona's Consumer Fraud Act. (*See* Doc. 22 at 8-9.) Specifically, Defendants argue the collective pleading by Plaintiff is not permitted under heightened pleading standards associated with this statute and fraud more generally. (*See id.*) Plaintiff counters with the same arguments discussed *supra*. (*See* Doc. 29 at 13-14.) For the reasons described earlier in this Report and Recommendation, undersigned agrees with Defendants that the collective pleading employed by Plaintiff in its Complaint is impermissible. Thus, undersigned continues to recommend dismissal on this claim for that reason.

### 5. Sufficiency of Class Action Allegations

Finally, Defendants contend the class allegations should be dismissed because Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3). (Doc. 22 at 15-17.) Specifically, Defendants argue that because the putative Class includes entities going back to 2020, statute of limitations questions would have to be resolved as to the individual

---

[3] Undersigned is aware that Defendants (and Avitus) have alleged Plaintiff was not entitled under federal law to receive the refunds or interest. However, undersigned does not convert the Motion to Dismiss into one for summary judgment.

Class members.  (*Id.* at 16.)  They further argue individualized inquiries into facts related to each potential Class member would have to be resolved under the Arizona Consumer Fraud Act, and that various Class members entered into different agreements for services with different subsidiaries, with individualized analysis for each member vis-à-vis their specific ERC claims being required.  (*Id.* at 16-17.)  Plaintiff objects to the Motion, arguing it is procedurally improper because it is a Rule 12(f) motion in Rule 12(b)(6)'s clothing, it is premature, and it is meritless.  (*See* Doc. 29 at 20-24.)  Because undersigned believes Plaintiff's argument regarding propriety of this Motion at this stage carries the day, the analysis will focus on same.

This Court has addressed this very issue in *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 WL 279576 (D. Ariz. Jan. 31, 2022).  Although the motion to strike was made later in *Canady* than at the responsive pleading stage, the reasoning applies to the case at bar.  It is important to distinguish that the instant motion to strike, which is couched within a 12(b)(6) motion, is not a motion to deny class certification under Rule 23.  Instead, it is a motion to strike the class allegations in the Complaint.  As the *Canady* court summarized: "Not only are Rule 12(f) motions to strike 'viewed with disfavor' and 'not frequently granted,' but the text of Rule 12(f) provides that a motion to strike may only be directed at 'an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'"  2022 WL 279576, at *3 (quoting *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) and Fed. R. Civ. P. 12(f)).  "These limited categories do not map neatly onto a class allegation" because "[s]uch an allegation is not a defense, is not redundant, is not impertinent, … is not scandalous[,]" and it "is something of a stretch" to argue a facially deficient class allegation is immaterial.  *Id.*  Furthermore, motions to strike before discovery are disfavored and motions for class certification are a better vehicle to consider sufficiency of a class allegation.  *See id.* (citations omitted).  "Thus, courts have held that resort to Rule 12(f) is improper where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class

- 15 -

certification under Rules 23(a) and 23(b)."  *Id.* (internal quotation marks and citation omitted).  Because undersigned agrees that the motion to strike is premature, undersigned would recommend the motion be denied on that basis, if the dismissal motion were not granted on impermissible collective pleading grounds.

### 6.  Leave to Amend

Plaintiff requests that, should the Court determine Plaintiff's Complaint is insufficient, it be given the opportunity to amend its Complaint. (Doc. 29 at 24.)  The request for leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("This policy is to be applied with extreme liberality.") (internal quotations and citations omitted); Fed. R. Civ. P. 15(a).

Generally, a plaintiff's amendment request should be granted unless the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Prejudice to the opposing party "carries the most weight" of these factors.  *Eminence Capital*, 316 F.3d at 1052 (citations omitted). The party opposing the amendment bears the burden of showing they would be prejudiced by the court granting leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-187 (9th Cir. 1987) (citing *Beeck v. Aqua-slide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977)). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital,* 316 F.3d at 1052 (citation omitted).

Defendants argue that the Complaint should be dismissed with prejudice "because Plaintiff refused to make any amendments to try and cure" the Complaint during the parties' conferral.  (Doc. 22 at 17, Doc. 38 at 11.)  In support of that argument, Defendants cite *AZG Enter. Inc. v. Honeywell Int'l Inc.*, No. CV-25-01657-PHX-JJT, 2025 WL 2480943, at *6 (D. Ariz. Aug. 28, 2025).  (Doc. 38 at 11 n.6.)  While it is true that this

District denied leave to amend in *AZG Enter.*, failure to make changes following conferral was not the only reason the Court arrived at that conclusion. 2025 WL 2480943, at *6. Rather, the Court found that amendment would be futile, and the Court further observed that Plaintiff had identified no "other information that is known to Plaintiff that might justify amendment." *Id.* Here, undersigned cannot conclude amendment would be futile, and Defendants do not argue futility. (*See* Docs. 22, 38.) Also, it appears Plaintiff may have additional information (e.g., relationship between Defendants) not originally pled. Thus, *AZG Enter.* is distinguished from this case. Moreover, nowhere do Defendants assert they would suffer any prejudice, undue delay in litigation, bad faith, or futility in allowing Plaintiff the opportunity to amend. (*See* Docs. 22, 38.)

Because leave to amend shall be "freely given" and the party opposing the amendment bears the burden of showing prejudice, undersigned will recommend that the District Judge afford Plaintiff the opportunity to amend its Complaint to allege sufficient facts to assert a plausible claim. *See* Fed. R. Civ. P. 15(a); *Leighton*, 833 F.2d at 186-187 (citing *Beeck*, 562 F.2d at 540).

7. Conclusion on Motion to Dismiss

As discussed, undersigned will recommend that the Motion to Dismiss be granted and the Complaint be dismissed with leave to amend. In the alternative, if the District Judge were to conclude Plaintiff's collective pleading in the Complaint did not warrant dismissal, undersigned would recommend the Motion be granted in part and denied in part as described above.

**III.    MOTION TO INTERVENE**

In addition to Defendants' Motion to Dismiss, non-party Avitus seeks to intervene in this case. (Doc. 19.) Because undersigned recommends the Complaint be dismissed, this Motion could be denied as moot. However, to provide a more complete Report and Recommendation for the District Judge, the Motion to Intervene will be analyzed.

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. Rule 24 is construed "broadly in favor of proposed intervenors." *United States v. City of Los*

*Angeles, Cal.*, 288 F.3d 391, 397 (9th Cir. 2002) (quoting *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992)).  Intervention may be as of right or permissive.  Fed. R. Civ. P. 24(a)-(b).

Avitus moves to both intervene as a matter of right under Rule 24(a) and permissively under Rule 24(b). (Doc. 19.)  Plaintiff opposes intervention under either theory. (Doc. 31.)  In addition, Plaintiff argues the Motion should be denied because Avitus did not comply with Rule 24(c).

### A.  Rule 24(c) Compliance

As a threshold matter, the Court rejects Plaintiff's argument that the Motion should be denied for failure to comply with Rule 24(c).  While it is true that Rule 24(c) states a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is brought," and it is also true that Avitus's Motion has no such accompanying pleading (*see* Doc. 39), Ninth Circuit precedent defeats Plaintiff's argument.  "[T]he failure to comply with the Rule 24(c) requirement for a pleading is a 'purely technical' defect which does not result in the 'disregard of any substantial right.'" *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (quoting *Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943)). "Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Id.* (quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992)).  Therefore, so long as the motion to intervene adequately informs the Court of the grounds for the Motion, the absence of the pleading is not fatal to the Motion.  *See id.*  Here, undersigned concludes Avitus' Motion sufficiently details the grounds on which intervention is sought; likewise, defenses it would assert are evident from the Motion. (*See* Doc. 19.)  Consequently, undersigned will not recommend the Motion be denied for failure to comply with Rule 24(c).

### B.  Intervention as of Right

Avitus seeks to intervene as of right pursuant to Rule 24(a)(2).  To intervene as a matter of right, an applicant must meet four requirements:  "(1) it has a significant

protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *City of Los Angeles*, 288 F.3d at 397 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks omitted in original)).

Here, Plaintiff challenges intervention as of right on three of the four above bases. (*See* Doc. 31 at 12-19.)  Plaintiff makes no argument about lack of timeliness (*see id.*), and the Court finds the intervention request was indeed timely at this early stage of the litigation.  Thus, undersigned focuses on the remaining three requirements in turn.

### 1. Significant Protectable Interest

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (internal citation omitted) (brackets in original)). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citing *Nw. Forest Res. Council*, 82 F.3d at 837). "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Donnelly*, 159 F.3d at 410)).

Plaintiff argues Avitus has no sufficient interest in this case because Avitus's contractual rights do not extend, and are unrelated, to this litigation's subject matter. (*See* Doc. 31 at 13-14.)  Of course, Avitus's contract with Plaintiff could not have contemplated COVID because it was executed years prior.  However, the Complaint alleges "the ERC uses payroll tax credits or deferrals to provide benefits to small businesses" and that Plaintiff contracted with Avitus "to provide employee administration, payroll

administration, and payroll tax services on its behalf." (Doc. 1 at ¶¶ 15, 22.) The scope, obligations, and duties under that relationship between Avitus, which is owned by Vensure, will be at issue in this matter. Avitus has had a relevant, contractual relationship with Plaintiff and there is a relationship between Avitus's legally protected interest and the claims at issue.

### 2. Practical Impairment

Next, the Court looks at whether the disposition of this action may, as a practical matter, impair or impede Avitus's ability to protect its interest. *Citizens for Balanced Use*, 647 F.3d at 898. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, 1966 advisory committee note.

Although Plaintiff argues that "determinations from this case will not bind Avitus in future actions" and will not affect Avitus's contractual rights (*see* Doc. 31 at 14-15), undersigned disagrees at least as to the latter. As Avitus points out, its ability to assert counterclaims such as unjust enrichment may be frustrated if certain determinations about the nature of the agreement(s) between the parties (and potentially nonparties) are made by the Court in this action. (*See* Doc. 39 at 7-8.) Undersigned finds this requirement is met.

### 3. Adequate Representation

Finally, the Court considers whether Avitus's interests are adequately represented by the current defendants in this action. "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Courts "consider[] three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (citing *California v. Tahoe*

*Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)).

Plaintiff argues Avitus's interests are adequately represented by Defendants. (Doc. 31 at 16-19.) Plaintiff emphasizes that Avitus is wholly owned by Defendants and therefore Avitus and Defendants are a single entity with completed unity of interest. (*Id.* at 17.) Plaintiff further points out that it "is not attempting to hold Vensure liable for Avitus's conduct" and its claims are based on Defendants' actions alone. (*Id.* at 18.) Plaintiff thus argues that Defendants can make any argument that Avitus could and because Avitus's rights are adequately represented, there is no right to intervene. (*Id.* at 19.)

Avitus counters with various arguments. Most persuasive to undersigned is that Avitus, and Avitus alone, would be the proper party to assert a counterclaim such as unjust enrichment because such a claim requires the claimant conferred a benefit on the other party. (*See* Doc. 39 at 9-10.) The claimant, in this instance, would be Avitus, not Defendants. Thus, while undersigned would typically agree that the parent-subsidiary relationship would create a unity of interest, the facts of this case (including the temporal aspect of the various entities' relationships with Plaintiff) undermine such a conclusion here. Avitus's argument is particularly strong when considering the first and third factors identified above, because Defendants would not (and could not) make all of Avitus's arguments. Undersigned concludes Avitus has made a "minimal" showing of demonstrating Defendants' representation of its "interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (9th Cir. 2003).

### 4. Conclusion as to Intervention as of Right

Because Avitus has demonstrated the four requirements for intervention as of right, undersigned would recommend the Motion be granted if this action were to continue. The District Judge would therefore not have to reach permissive intervention. However, to provide a more complete Report and Recommendation, undersigned will analyze intervention under Rule 24(b).

### C. Permissive Intervention

"[A] court may grant permissive intervention where the applicant for intervention

shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (quoting *Nw. Forest Res. Council*, 82 F.3d at 839). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412.

First, Plaintiff argues there is no independent jurisdictional basis for Avitus's intervention. (Doc. 31 at 19.) In support, Plaintiff cites *Blake v. Pallan*, 554 F.2d 847, 956 (9th Cir. 1977). (*Id.*) The *Blake* court, however, quoted 3B Moore's Federal Practice P24.18(1), 24-753, which stated in pertinent part: "Intervention in an in personam action under a discretionary right must be supported by independent grounds of jurisdiction except when the action is a class action." *Blake*, 554 F.2d at 956. This is a putative class action; thus, this is not necessarily required.

Second, Plaintiff does not challenge timeliness (*see* Doc. 31 at 19-21), and the Court has already found the intervention motion to be timely.

Third, a common question of law or fact is not challenged by Plaintiff, (*see* Doc. 31 at 19-20), and undersigned finds they are present.

Finally, Plaintiff urges the Court to exercise its discretion and deny permissive intervention. (Doc. 31 at 20-21.) Plaintiff again argues that Avitus's interests are adequately represented. (*Id.* at 21.) As undersigned discussed *supra*, however, undersigned disagrees with that notion. Undersigned further disagrees that adding Avitus would complicate the case, as Plaintiff contends (*see id.*), as Avitus' participation would permit a more complete record regarding the relationships between entities, as they have evolved over time, and therefore promote judicial efficiency. Undersigned also notes there is nothing on the record to indicate including Avitus's participation will delay this matter.

Thus, undersigned would recommend permissive intervention be permitted, in the event the District Judge were to permit the case to proceed and determine intervention as of right is not warranted.

///

**D. Conclusion on Motion to Intervene**

As discussed *supra*, the District Judge may deny the Motion to Intervene as moot, in the event the Complaint were dismissed. Thus, that would be undersigned's recommendation. However, if the District Judge were to deny the Motion to Dismiss, undersigned would recommend the Motion to Intervene be granted for the reasons described above.

## IV. MOTION FOR PROTECTIVE ORDER

The final motion pending before the Court is Avitus's Motion for Protective Order. (Doc. 20.) There is no opposition to the Motion, which seeks to enter a protective order "authorizing Avitus's redaction of . . . information detailed in the Form 941s attached to Avitus's motion to intervene as Exhibits B, C, and D." (*Id.* at 4.) Further, the Motion appears to well-taken, as the protective order is sought "to protect sensitive and confidential financial and tax information of Avitus and other nonparties." (*Id.* at 3.) Finally, the Court observes that information has been redacted from the exhibits referenced in the Motion. (*See* Doc. 19-1.) Good cause appearing to grant the unopposed Motion, it will be granted. As a practical matter, because the exhibits have been redacted, no further action is required other than entering the Order granting.

## V. CONCLUSION

For the foregoing reasons,

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED:**

1. That Defendants' Motion to Dismiss Class Action Complaint (Doc. 22) be granted, and that the Complaint be dismissed with leave to amend within 14 days of the Court's Order adopting the recommendation;

2. That Avitus, Inc.'s Motion to Intervene (Doc. 19) be denied as moot; and

3. That the temporary stay (Doc. 37) be lifted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

## ORDER

**IT IS ORDERED granting** Avitus, Inc's Motion for Protective Order (Doc. 20).

Dated this 6th day of March, 2026.

_____
Honorable Alison S. Bachus
United States Magistrate Judge